**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**MILIND DESAI**, Individually, and on behalf
of all those similarly situated

       Plaintiff,

v.

**GEICO CASUALTY COMPANY**,

       Defendant.

Case No. 19-CV-02327

**DEFENDANT GEICO CASUALTY COMPANY'S MOTION AND SUPPORTING**
**MEMORANDUM TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

**MOTION**

       Defendant GEICO Casualty Company ("GEICO") moves this Court to dismiss Plaintiff Milind Desai's Class Action Complaint and Demand for Jury Trial ("Complaint"), and each claim, with prejudice for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).  The grounds and authority for this Motion are set forth in the following supporting Memorandum of Points and Authorities, which is incorporated as part of this Motion.

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ......................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES .................................................1

I.     ISSUES TO BE DECIDED ...................................................................................1

II.    SUMMARY OF ARGUMENTS PRESENTED .................................................2

III.   ARGUMENT .........................................................................................................4

      A.   Ohio Admin. Code § 3901–1–54(H)(7), On Which Each Of Plaintiff's Claims Is Based, Provides No Private Right Of Action. ........................................4

      B.   Count II Fails Because The Statute That Plaintiff Cited Does Not Authorize The Fee He Seeks, And He Has Not Plausibly Alleged Breach Or Damages, Or That The Regulations Or Policy Require GEICO To Pay The Fee.................................................................................................................5

          i.    Revised Code § 4503.02 Does Not Authorize The License Fee That Plaintiff Seeks, And He Has Not Alleged That He Has To Pay Any Fee Authorized By That Statute.........................................................5

          ii.   Plaintiff Has Not Plausibly Alleged That § 3901–1–54(H)(7) Requires GEICO To Pay Any License Fee Allegedly Mandated By Ohio Revised Code § 4503.02. .............................................................6

          iii.  The Policy Does Not Require GEICO To Pay Any Fees Allegedly Mandated By Ohio Revised Code § 4503.02................................................9

      C.   Count III Fails Because Neither The Regulations Nor The Policy Require GEICO To Pay "Title Fees," and GEICO Paid Plaintiff's Title Fee After He Replaced His Vehicle. ......................................................................................10

      D.   Count IV Fails Because Plaintiff Fails To Plausibly Allege That The CCC Report Does Not Comply With The Policy Or The Regulations, And Fails To Allege Damages..............................................................................................11

          i.    Plaintiff Fails To Plausibly Allege That The CCC System Does Not Comply With § 3901–1–54(H). .........................................................11

          ii.   Plaintiff Identifies No Policy Term That GEICO Breached By Using The CCC System. .................................................................16

          iii.  Plaintiff Offers No Plausible Damages Theory. .......................................16

E.      Count V Fails Because The Regulations And Policy Do Not Require
        GEICO To Pay "Dealer Fees," Plaintiff's Dealer-Fee Allegations are
        Implausible, and Plaintiff Has Not Alleged Damages. ..........................................18

        i.      Neither The Regulations Nor Policy Require GEICO To Pay
                Presumed Dealer Fees. ...............................................................................18

        ii.     Plaintiff Has Not Plausibly Alleged That He Will Incur Dealer
                Fees. ...........................................................................................................18

F.      Count I Fails For The Same Reason As The Claims With Which It Is
        Redundant, And Plaintiff Fails To Satisfy The Requirements For
        Obtaining Relief Under The Ohio Declaratory Judgment Act. ............................19

IV.    CONCLUSION ...............................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arcenio v. Youngstown State Univ.*,
    68 N.E.3d 157 (Ohio Ct. App. 2016) ........................................................................ 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................... 5, 20

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................... 11, 14, 20

*Borden v. Antonelli Coll.*,
    304 F. Supp. 3d 669 (S.D. Ohio 2018)................................................................. 17

*Days Inn Worldwide, Inc. v. Sai Baba, Inc.*,
    300 F. Supp. 2d 583 (N.D. Ohio 2004) .............................................................. 22

*DLZ Corp. v. Ohio Dep't of Adm. Serv.*,
    658 N.E.2d 28 (Ohio Ct. App. 1995) .................................................................. 15

*Furr v. State Farm Mut. Auto. Ins. Co.*,
    716 N.E.2d 250 (Ohio Ct. App. 1998) ................................................................. 4

*Harding v. Conrad*,
    700 N.E.2d 639 (Ohio Ct. App. 1997) ................................................................. 8

*Hill v. Blue Cross and Blue Shield of Mich.*,
    409 F.3d 710 (6th Cir. 2005).............................................................................. 1

*Hybud Equip. Corp. v. Sphere Drake Ins. Co.*,
    597 N.E.2d 1096 (Ohio 1992).............................................................................. 9

*In re Omnicare, Inc. Sec. Litig.*,
    769 F.3d 455 (6th Cir. 2014)................................................................................ 9

*Jack v. Grose*,
    No. 2:16–CV–633, 2017 WL 958621 (S.D. Ohio Mar. 13, 2017)...................... 21

*Jarupan v. Hanna*,
    878 N.E.2d 66 (Ohio Ct. App. 2007) ............................................................. 6, 19

*M6 Motors, Inc. v. Nissan of N. Olmsted, LLC*,
    14 N.E.3d 1054 (Ohio Ct. App. 2014) ............................................................... 15

*Michigan Corr. Org. v. Michigan Dep't of Corr.*,
    774 F.3d 895 (6th Cir. 2014)............................................................................... 21

*Mikulski v. Centerior Energy Corp.*,
    501 F.3d 555 (6th Cir. 2007)............................................................................... 12

*NACCO Indus., Inc. v. Tracy*,
    681 N.E.2d 900 (Ohio 1997)................................................................................ 9

*Papasan v. Allain*,
    478 U.S. 265 (1986) ........................................................................................... 12

iii

*Raudins v. Hobbs*,
    104 N.E.3d 1040 (Ohio Ct. App. 2018) ................................................................. 10
*Ryan v. Romo*,
    No. 2:14–CV–38, 2017 WL 2225481 (S.D. Ohio May 22, 2017) .......................... 21
*State ex rel. Carna v. Teays Valley Local Sch. Dist. Bd. of Edn.*,
    967 N.E.2d 193 (Ohio 2012) ................................................................................. 13
*Strack v. Westfield Cos.*,
    515 N.E.2d 1005 (1986) .......................................................................................... 4
*Transp. Ins. Co. v. Busy Beaver Bldg. Ctrs., Inc.*,
    969 F. Supp. 2d 875 (S.D. Ohio 2013) ................................................................. 19
*Wachendorf v. Shaver*,
    78 N.E.2d 370 (Ohio 1948) .............................................................................. 8, 19
*Westfield Ins. Co. v. Galatis*,
    797 N.E.2d 1256 (Ohio 2003) ................................................................................ 9
*William Powell Co. v. Nat'l Indem. Co.*,
    141 F. Supp. 3d 773 (S.D. Ohio 2015) ................................................................... 4
*Zingale v. Ohio Casino Control Comm.*,
    2014–Ohio–4937, 2014 WL 5765387 (Ohio Ct. App. Nov. 6, 2014) ...................... 7
*Zurich Ins. Co. v. Cooper Tire & Rubber Co.*,
    465 F. Supp. 2d 827 (N.D. Ohio 2006) ................................................................. 21

**Statutes**

OHIO ADMIN. CODE § 3901–1–54 ................................................................................. 4
OHIO ADMIN. CODE § 3901–1–54(A) ............................................................................ 4
OHIO ADMIN. CODE § 3901-1-54(H)(6) ........................................................................ 8
OHIO ADMIN. CODE § 3901–1–54(H)(7) .............. 1, 2, 4, 6, 7, 8, 10, 11, 12, 15, 17, 18, 19, 20, 21
OHIO ADMIN. CODE § 3901–1–54(H)(7)(a) ................................................... 12, 13, 15
OHIO ADMIN. CODE § 3901-1-54(H)(7)(a)-(f) ............................................................... 7
OHIO ADMIN. CODE § 3901–1–54(H)(7)(d) ......................................................... 12, 15
OHIO ADMIN. CODE § 3901–1–54(H)(7)(d)(i) ............................................................ 15
OHIO ADMIN. CODE § 3901-1-54(H)(7)(f) ............................................................... 7, 17
OHIO REV. CODE ANN. § 1317.07 ........................................................................ 19, 20
OHIO REV. CODE ANN. § 3901.041 ............................................................................... 7
OHIO REV. CODE ANN. § 4503.02 ................................................ 1, 3, 5, 6, 8, 9, 10
OHIO REV. CODE ANN. § 4503.04 ................................................................................. 5
OHIO REV. CODE ANN. § 4503.11 ................................................................................. 5
OHIO REV. CODE ANN. § 4503.12(A)(4) .................................................................... 5, 6
OHIO REV. CODE ANN. § 4517.261 ........................................................................ 19, 20

**Rules**

Fed. R. Civ. P. Rule 12(b)(6) ............................................................................................................ 1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     ISSUES TO BE DECIDED

1.      Can Plaintiff's claims proceed, even though they each rely entirely upon a regulation (or the alleged incorporation of that regulation into Plaintiff's insurance contract) that affords no private right of action?

2.      Has Plaintiff stated a claim that GEICO must pay him a "minimum $4.50 license tax" when the statute he cites as the source of the "tax" does not impose the tax he seeks, neither the insurance policy nor the regulations he alleges are incorporated into the policy require payment of the tax, and Plaintiff has not alleged he actually incurred any such tax?

3.      Has Plaintiff stated a claim that GEICO must unconditionally pay him a $15 title fee that neither the policy nor the regulations he alleges are incorporated into the policy require GEICO to pay, and that GEICO already voluntarily paid him?

4.      GEICO alleged used the CCC system, which used prices and information from 12 comparable vehicles advertised for sale by dealers in the local area and information about Plaintiff's vehicle, to determine the vehicle's value.  Plaintiff's allegations suggest that the CCC system complied with at least two subsections of the regulations, and he alleges no plausible basis for the damages he seeks.  Has Plaintiff stated a claim that GEICO breached the insurance policy or the regulations he alleges are incorporated into the policy by using the CCC system?

5.      Neither the insurance policy nor the regulations that Plaintiff alleges are incorporated into the policy require GEICO to pay presumed dealer fees that he may or may not incur.  And Plaintiff has not alleged he actually incurred, or plausibly alleged he would necessarily incur, the fees if he purchased a comparable vehicle.  Can Plaintiff maintain a claim that GEICO must pay estimated dealer fees?

6.      Can Plaintiff's declaratory relief claim, which is entirely duplicative of his breach of contract claims, proceed when the other claims fail?

1

## II.     SUMMARY OF ARGUMENTS PRESENTED

Plaintiff alleges that an accident rendered his car ("Audi"), which was insured under a GEICO auto insurance policy ("Policy"), a total loss. Compl. ¶¶ 33–34.[1]  In offering Plaintiff a settlement, GEICO provided Plaintiff a 20-page report ("CCC Report"), with information on how the Audi's value and GEICO's settlement offer were derived.  Plaintiff never tried to negotiate the settlement, or even to renegotiate the settlement if a comparable vehicle was not available for purchase within 35 days of receipt of the settlement, as OHIO ADMIN. CODE § 3901–1–54(H)(7)(f) permits.  Instead, over two-and-a-half years after Plaintiff accepted GEICO's offer and purchased a replacement vehicle, he filed suit.  He alleges that GEICO breached the Policy in four ways when he agreed to settle his claim, and seeks a declaration related to these past alleged breaches.  Plaintiff also seeks to represent a class of GEICO insureds.

The Court should dismiss each cause of action because each is based on a regulation (which Plaintiff claims is incorporated into the Policy) that provides no private right of action.

Count II — which claims that GEICO violated OHIO ADMIN. CODE § 3901–1–54(H)(7) and breached the Policy by not paying a "minimum $4.50 license tax required by OHIO REV. CODE § 4503.2" — also fails because: (1) the statute that Plaintiff cites does not authorize the fee he seeks and he provides no plausible basis to suggest he would have to pay the fee he seeks or any fee imposed by the statute he cites, or that he has ever paid such a fee; (2) the regulation on which Plaintiff relies does not require payment of any license fee as it does not include corollary expenses (such as expenses to use a replacement vehicle) in a cash settlement; and (3) the Policy, even without reference to the regulation, does not require GEICO to pay any license fee because it limits GEICO's liability to the cost to replace the vehicle, not the corollary expenses an insured may incur to operate a replacement vehicle.

Count III — which claims GEICO violated § 3901–1–54(H)(7) and breached the Policy by requiring Plaintiff to submit documentation to substantiate his claim for a $15 title fee — fails

---

[1] GEICO disputes many of Plaintiff's allegations, but assumes they are true for this motion, as it must.  *Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005).

because: (1) neither the regulation on which Plaintiff relies, nor the Policy, requires GEICO to pay a $15 title fee, which is not the cost of replacing a vehicle, but an expense to operate it; (2) GEICO's payment of the fee to settle Plaintiff's claim does not change that GEICO did not have to pay it, and GEICO's request for documentation that the fee was incurred before doing so complies with the regulation and the Policy, each of which require an insured to submit a written proof of loss; and (3) Plaintiff provides no basis to receive interest on the $15.

Count IV — which claims GEICO violated § 3901–1–54(H)(7) and breached the Policy by using the "CCC system" to determine the amount of a settlement offer for the Audi — fails because: (1) neither the regulations nor the Policy preclude GEICO from using the CCC system to derive a settlement offer, and Plaintiff has not plausibly alleged that the system does not comply with regulatory provisions that permit the use of (i) the cost of two or more comparable automobiles in the local market area that are or were available to consumers within the preceding 90 days, or (ii) a generally recognized used motor vehicle industry source; (2) Plaintiff's criticism of the condition adjustments applied to the comparable vehicles used to derive the settlement offer misunderstand or misrepresent those adjustments and ignore that the regulations and the Policy permit adjustments for the Audi's condition; and (3) given that GEICO could adjust for the Audi's condition and Plaintiff does not contest that the Audi was in a condition less than dealer condition, he has not plausibly alleged that the small reduction in value for the condition of the Audi was less than he was entitled to receive.

Count V — which claims GEICO violated § 3901–1–54(H)(7) and breached the Policy by failing to pay estimated dealer fees he "would presumptively incur" if he purchased a replacement vehicle — fails because: (1) neither the regulations nor the Policy require GEICO to pay such fees; (2) Plaintiff cannot plausibly allege he will incur dealer fees; and (3) Plaintiff fails to allege damage because he does not allege he actually incurred, or would incur, the statutory maximum in dealer fees if he obtained a comparable vehicle.[2]

---

[2] Count I — Plaintiff's declaratory relief claim — is duplicative of the breach-of-contract claims and fails for the same reasons the four other claims fail.

III.    **ARGUMENT**

    A.    **Ohio Admin. Code § 3901–1–54(H)(7), On Which Each Of Plaintiff's Claims Is Based, Provides No Private Right Of Action.**

Plaintiff's claims are incurably defective because they are all based on GEICO's alleged breach of OHIO ADMIN. CODE § 3901–1–54(H)(7), which Plaintiff claims is incorporated into the Policy.  Compl. ¶¶ 1, 15–17, 24–26, 27–30, 66–67, 69, 72, 75, 78.  There is, however, no private right of action for alleged violations of § 3901–1–54, and Plaintiff cannot create such a right by asserting the regulation is incorporated into the Policy and claiming breach of contract.

OHIO ADMIN. CODE § 3901–1–54(A) expressly precludes any private right of action based on alleged violations of that section, and Ohio courts have affirmed the rule's plain language.  *Id.* ("Nothing in this rule shall be construed to create or imply a private cause of action for violation of this rule."); *Furr v. State Farm Mut. Auto. Ins. Co.*, 716 N.E.2d 250, 257 (Ohio Ct. App. 1998) (collecting cases holding the same).  Because each of Plaintiff's claims relies on § 3901–1–54, and its incorporation into the Policy, they must be dismissed.

Plaintiff errs by attempting to create a private right of action for an alleged violation of § 3901–1–54 through his argument that the Policy incorporates the regulation, and then couching his claims as breach of contract claims.  The Policy states: "Any terms of this policy in conflict with the *statutes* of Ohio are amended to conform to those *statutes*."  Compl. ¶ 15 (emphasis added).  The Ohio Administrative Code, including § 3901–1–54, is not a statute.  OHIO REV. CODE ANN. § 103.05 (the Ohio Administrative Code is a compilation of the rules of Ohio administrative agencies).  Plaintiff is therefore incorrect when he alleges that "[b]y its own terms . . . , to the extent the Policy's express terms . . . vary from the provisions of Ohio Admin. Code . . . it is deemed amended to conform with that statute."  *See* Compl. ¶¶ 69, 72, 75, 78.  Plaintiff further points to no Ohio law incorporating the Ohio Administrative Code into the Policy.  *Id.*

Even if § 3901–1–54 was incorporated into the Policy, the entire regulation would be incorporated, including the preclusion of a private right of action.  The Court should not allow Plaintiff to circumvent that express language by asserting common-law breach of contract claims

based on alleged violations of the regulation.  *See William Powell Co. v. Nat'l Indem. Co.*, 141 F. Supp. 3d 773, 782 (S.D. Ohio 2015) ("Ohio law . . . does not provide a private cause of action to insureds against insurance companies or their claims administrators for committing unfair insurance practices.") (citation omitted); *Strack v. Westfield Cos.*, 515 N.E.2d 1005, 1008 (1986) ("The Department of Insurance was established in order to determine what insurance practices were unfair or deceptive and how to best control them.  The combination of administrative remedies and civil penalties reflects the legislative solution to a problem perceived by it.  This court will not substitute its judgment for that of the legislature, which could have easily expressly provided for such a remedy.").  This Court must reject Plaintiff's attempt to shoehorn a barred claim into breach of contract and declaratory judgment claims.

      **B.**    **Count II Fails Because The Statute That Plaintiff Cited Does Not Authorize The Fee He Seeks, And He Has Not Plausibly Alleged Breach Or Damages, Or That The Regulations Or Policy Require GEICO To Pay The Fee.**

              *i.*    *Revised Code § 4503.02 Does Not Authorize The License Fee That Plaintiff Seeks, And He Has Not Alleged That He Has To Pay Any Fee Authorized By That Statute.*

In Count II, Plaintiff alleges that GEICO breached the Policy by not unconditionally paying a "minimum $4.50 license tax required by Ohio Rev. Code § 4503.2 ('license fee')." Compl. ¶¶ 1, 4, 41, 68–70.  Section 4503.02, however, does not impose a minimum $4.50 license fee.  It, instead, levies an annual license tax on vehicles operated on Ohio's public roads and highways.  OHIO REV. CODE ANN. § 4503.02; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (the Court need not accept legal conclusions as true).  The tax varies in amount based on the vehicle registered,[3] and is prorated, so if a vehicle is registered partway through the year, payment need not be made for the full year.  OHIO REV. CODE ANN. §§ 4503.02, 4503.04, 4503.11.  If a vehicle owner paid the tax and then transferred the registration to another vehicle, the owner would receive a credit for the unused, prorated portion of the paid tax.  *Id.* at § 4503.12(A)(4).  Any tax owed is then based on the difference between the credit and the

---

[3] The annual tax for a passenger car is $20.  OHIO REV. CODE ANN. § 4503.04.

prorated tax owed on the succeeding vehicle. *Id.* The statute anticipates that an owner's credit from the original registration may exceed the tax due on the succeeding vehicle, prohibiting payment of any refund. *Id*. As a result, it is possible for a vehicle owner to pay no annual license tax when he registers a replacement vehicle, much less a "minimum $4.50" amount under § 4503.02. The statute that Plaintiff cites does not authorize the "license fee" he seeks. It thus cannot support his claim against GEICO.

Even if § 4503.02 mandated a $4.50 license fee, Plaintiff's claim still fails because Plaintiff identifies <u>no</u> provision in the Policy (or the regulation he improperly attempts to assert a private right of action under) that requires GEICO to assume he will incur a fee that *might* be required by § 4503.02, much less that it will be a minimum of $4.50. Compl. ¶¶ 68–70. Plaintiff also identifies <u>no</u> provision that requires GEICO to anticipatorily make unconditional payments of this fee, with no showing that he has, or will, incur it. *See Jarupan v. Hanna*, 878 N.E.2d 66, 73, ¶ 18 (Ohio Ct. App. 2007) (to prove breach of contract, plaintiff must show defendant "'did not perform one or more of the terms of the contract'").

Plaintiff also fails to plausibly allege damages because besides his erroneous conclusion that § 4503.02 imposes a minimum $4.50 fee, he does not allege that, when he registered his replacement vehicle, he had to pay the § 4503.02 tax, or even that he would have had to do so had he registered a replacement vehicle.

ii. *Plaintiff Has Not Plausibly Alleged That § 3901–1–54(H)(7) Requires GEICO To Pay Any License Fee Allegedly Mandated By Ohio Revised Code § 4503.02.*

Section 3901–1–54(H)(7), which establishes "[s]tandards for prompt, fair and equitable settlements of automobile insurance claims," states:

> In settlement of claimants' automobile total losses on the basis of actual cash value or replacement of the automobile with another of like kind and quality, an insurer which elects to offer a cash settlement to claimant shall base the offer upon the actual cost to purchase a comparable automobile less any applicable deductible amount contained in the policy, and/or deduction for betterment as

6

contained in paragraph (H)(2) of this rule.[4]

The rule identifies methods by which an insurer may derive a settlement value.  It also defines the insurer's obligation to pay for sales tax.  Specifically, it requires the insurer to reimburse a claimant for "the actual amount of the applicable sales tax on the purchased vehicle," but only if the claimant purchases a replacement vehicle within 30 days of receiving a cash settlement for a total loss.  Further, the rule limits the sales-tax-reimbursement obligation to the amount of sales tax that the claimant would have paid had he purchased a vehicle with a market value equal to the amount of the cash settlement.  OHIO ADMIN. CODE § 3901–1–54(H)(7)(a)–(f).  If a claimant fails to "substantiate" the purchase of a replacement vehicle and the payment of sales tax by submitting "appropriate documentation" to the insurer within 33 days of receiving the cash settlement, the insurer does not have to reimburse the claimant for sales tax.  *Id.* at § 3901–1–54(H)(7)(f).

Under the regulation's plain language, a "cash settlement" based on "actual cash value," which is all (H)(7) requires an insurer to pay, does not include corollary expenses.  If "cash settlement" included corollary expenses, there would be no reason for the rule to include an after-the-fact reimbursement provision for sales tax.  There would not be a provision that relieves an insurer from paying sales tax if the claimant does not substantiate, within 33 days of receiving the cash settlement, that he or she incurred sales tax.  If corollary expenses were part of the "cash settlement" envisioned by (H)(7), corollary expenses would be identified as part of a "cash settlement."  Given that corollary expenses are not part of the "cash settlement," and sales tax is the only corollary expense a claimant can receive (if substantiated within 33 days of receipt of the cash settlement), the rule does not authorize Plaintiff to receive other corollary expenses, such as the "License Fee" allegedly mandated by Ohio Revised Code § 4503.02.

Nor can Plaintiff find refuge in the rules of statutory construction.  Those rules require

---

[4] *See also* OHIO REV. CODE ANN. § 3901.041 (giving the superintendent of insurance rulemaking authority); *Zingale v. Ohio Casino Control Comm.*, 2014–Ohio–4937, 2014 WL 5765387, at *14, ¶ 80 (Ohio Ct. App. Nov. 6, 2014) (citation omitted) (Ohio courts "interpret administrative rules in the same manner as statutes.").

courts to "give effect to the words explicitly used in a statute or rule rather than deleting words used, or inserting words not used, in order to interpret an unambiguous statute or rule." *Harding v. Conrad*, 700 N.E.2d 639, 640 (Ohio Ct. App. 1997) (citations omitted).  Reading into (H)(7) a requirement that the "actual cost to purchase a comparable automobile" incudes such a "license fee" would flout those rules by rendering (H)(7) inconsistent with (H)(6).  Subsection (H)(6) explicitly requires an insurer to unconditionally pay "all applicable taxes, license fees, and other fees incident to transfer of evidence of ownership of the automobile at no cost to [the] claimant other than any deductible provided in the policy."  OHIO ADMIN. CODE § 3901–1–54(H)(6)(c). Subsection (H)(6) applies if the insurer elects to offer a replacement vehicle, instead of "a cash settlement."  Consistent with the reimbursement procedure for sales tax in (H)(7), the omission of any similar language requiring payment of "all applicable taxes, license fees and other fees" from (H)(7), indicates that, unlike where an insurer replaces the vehicle in (H)(6), when an insurer offers a cash settlement, that cash settlement does not include any corollary expenses. The express departure in (H)(7) from (H)(6)'s requirement, and adoption of a requirement that an insurer merely reimburse sales taxes if the claimant meets set requirements, indicates an intent to *not* include those fees and taxes in the "actual cash value."[5]  This Court should not read into the regulation a term the rule-making authority could have, but chose not to, include.

---

[5] *See Wachendorf v. Shaver*, 78 N.E.2d 370, 374 (Ohio 1948) ("[T]he Legislature must be assumed or presumed to know the meaning of words, to have use the words of a statute advisedly and to have expressed legislative intent by the use of the words found in the statue; . . . nothing may be read into a statute which is not within the manifest intention of the Legislature as gathered from the act itself; . . . it is a cardinal rule of statutory construction that significance and effect should if possible be accorded every word, phrase, sentence and part of an act.") (citation omitted); *Arcenio v. Youngstown State Univ.*, 68 N.E.3d 157, 164, ¶ 34 (Ohio Ct. App. 2016) ("The canon *expressio unius est exclusio alterius* tells us that the express inclusion of one thing implies the exclusion of the other. . . . [T]his canon . . . has force . . . when the items expressed are members of an associated group or series, justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence.") (citations omitted) (internal quotation marks omitted); *NACCO Indus., Inc. v. Tracy*, 681 N.E.2d 900, 902 (Ohio 1997) ("Congress is generally presumed to act intentionally and purposely when it includes particular language in one section of a statute but omits it in another.") (citation omitted).

    iii.  *The Policy Does Not Require GEICO To Pay Any Fees Allegedly Mandated By Ohio Revised Code § 4503.02.*

  The Policy does not mention "license fees," nor does it require GEICO to pay them.  The definition of "[a]ctual cash value" in the Policy requires only that GEICO pay the "replacement cost of the auto or property less depreciation or betterment,"[6] and not any collateral expenses that could be incurred for operating a replacement vehicle.  *See* Compl. ¶ 15 (allegedly quoting the Policy).  The Policy only covers "Loss," which is defined as "direct and accidental loss of or damage to: (a) the auto, including its equipment."  *Id*.  Any fee that § 4503.02 imposes is not a "loss of or damage to" the Audi or its equipment.  Instead, it is an additional cost that might be incurred to register a vehicle.  *See Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261, ¶ 11 (Ohio 2003) ("When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties.") (citation omitted); *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 597 N.E.2d 1096, 1102 (Ohio 1992) ("[I]nsurance contracts must be construed in accordance with the same rules as other written contracts.") (citations omitted).

  Consistent with coverage for "Loss," the Policy expressly limits GEICO's liability to the "[a]ctual cash value," defined as "the replacement cost of the auto . . . less ***depreciation*** or ***betterment***," not to exceed "the prevailing competitive cost to . . . replace the property at the time of ***loss***."  Compl. ¶ 15.  The alleged "license fee" is not part of the Audi's "actual cash value," nor is it the "prevailing competitive cost to" replace the Audi.  Rather, the fee is a collateral expense associated with operating the replacement vehicle that might be charged besides the actual cost of replacing the vehicle itself.  The fee exceeds the Policy's express liability limit and is excluded from coverage.

  Nor can the fee be considered "depreciation" or "betterment."  The Policy's inclusion of "depreciation" and "betterment" demonstrates the meaning of the term "value" in the phrase

---

[6] The Policy defines betterment as "improvement of the auto . . . to a value greater than its pre-loss condition" and defines depreciation as "a decrease or loss in value to the auto . . . because of use, disuse, physical wear and tear, age, outdatedness or other causes," respectively.  Ex. 1, Desai Policy, at 12 ("Policy"); *see id.* at 14 (defining "actual cash value").  The Court may consider the Policy because Plaintiff references and quotes it in his Complaint.  *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) (citation omitted).

"actual cash value;" the Policy covers the vehicle's monetary worth at the time of loss, not collateral expenses associated with licensure.  Even if Plaintiff had to pay a license fee under § 4503.02 to operate a replacement vehicle, it would provide no basis to disregard the Policy's express terms on covered loss and the liability limit.  *See Raudins v. Hobbs*, 104 N.E.3d 1040, 1049, ¶ 26 (Ohio Ct. App. 2018) ("Where the provisions of an insurance policy are clear and unambiguous, courts may not indulge themselves in enlarging the contract by implication in order to embrace an object distinct from that contemplated by the parties.").

> **C.     Count III Fails Because Neither The Regulations Nor The Policy Require GEICO To Pay "Title Fees," and GEICO Paid Plaintiff's Title Fee After He Replaced His Vehicle.**

As with the "license fee" that Plaintiff claims in Count II, § 3901–1–54(H)(7) neither mentions "title fees" nor requires an insurer to pay them.  *See supra* § IV(B) (demonstrating that corollary fees that may have to be paid to operate (*i.e.*, not purchase) a vehicle are not included in a cash settlement under subsection (H)(7)).  The Court should not read into the regulation a requirement the rule maker did not impose.

Like the regulations, the Policy does not mention "title fees," nor does it require GEICO to pay them.  *See supra* § IV(C) (demonstrating that corollary fees that may have to be paid to operate (*i.e.*, not purchase) a vehicle exceed the Policy's liability limit).  That GEICO paid Plaintiff the $15 title fee after he submitted documentation demonstrating he incurred the fee to settle his claim, Compl. at Ex. D, Demand Letter (conceding GEICO paid the fee), does not change that neither the Policy nor the regulation required GEICO to do so.

Nor was GEICO required to assume that Plaintiff would incur the fee before he incurred it, or reimburse him for a fee he had not yet incurred.  Plaintiff alleges that after he incurred the $15 fee, he submitted documentation substantiating that payment and GEICO reimbursed him.  Compl. ¶ 4, Ex. D ("GEICO conditions payment of the $15 fee on . . . provision to it of documentation [that the insured incurred the fee]," and "after [Plaintiff] purchased a new vehicle, Geico paid . . . a title fee of $15.00").  Plaintiff identifies no provision in the Policy or regulation

prohibiting GEICO from requesting documentation substantiating a loss.  Quite the opposite, the regulation defines "proof of loss" as "a document from the claimant that provides sufficient information from which the insurer can determine the existence and the amount of the claim."  OHIO ADMIN. CODE § 3901–1–54(C)(17).   The Policy includes a similar proof of loss requirement.  Ex. 1 at 15 (describing insured's duties in event of loss).  Plaintiff's complaint that GEICO allegedly required him to submit documentation to support his claim is meritless.  He identifies no statutory or Policy provision entitling him to "interest on the $15.00 title fees" because GEICO requested documentation substantiating his claim.  Compl. ¶¶ 36, 51, 73.

Whether or not GEICO was required to pay the $15 title fee, Plaintiff's Complaint concedes that GEICO reimbursed him for it.  Ex. D.  Plaintiff has not plausibly alleged any theoretical interest accrued on the $15 title fee either before he incurred it or during the period in which GEICO processed his substantiated requests for reimbursement.  Compl. ¶¶ 36, 51, 73; *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (court need not "'accept as true a legal conclusion couched as a factual allegation'") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  He, thus, fails to plausibly allege facts supporting either a breach or damages for non-payment of the $15 title fee, or for payment of interest related to the title fee.  *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 562 n.3 (6th Cir. 2007) (en banc) (breach of contract requires proof that the defendant "unlawfully failed to fulfill his obligations" under contract, and "damages resulted from this failure") (citation omitted).

**D.    Count IV Fails Because Plaintiff Fails To Plausibly Allege That The CCC Report Does Not Comply With The Policy Or The Regulations, And Fails To Allege Damages.**

*i.    Plaintiff Fails To Plausibly Allege That The CCC System Does Not Comply With § 3901–1–54(H).*

Section 3901–1–54(H)(7) prescribes methods to derive the "settlement value" of a total loss vehicle.  Plaintiff conclusorily alleges that the CCC system, which GEICO allegedly used to determine its settlement offer for the Audi, violates the rule, Compl. ¶¶ 3, 23–24, 27–29, 34, 76, but his other allegations demonstrate this conclusion is not plausible regarding subsections

11

(H)(7)(a) (permitting the cost to be derived from the average cost of two or more comparable automobiles, as demonstrated by the CCC Report) and (H)(7)(d) (permitting the cost to be derived from a generally recognized used motor vehicle industry source). *See Papasan*, 478 U.S. at 286 ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation."). Plaintiff also fails to plausibly allege that the CCC Report does not comply with subsection (H)(2) (requiring insurers to maintain information regarding reductions in the claim file, and to itemize them in the written estimate).

> a. The CCC System Uses Comparable Motor Vehicles Available in the Local Market Area Within The Preceding 90 Days.

Plaintiff does not plausibly allege that the CCC Report purportedly used to settle his claim does not comply with (H)(7)(a). That subsection permits an insurer to derive a total loss settlement "on the basis of actual cash value" from "[t]he average cost of two or more comparable automobiles in the local market area" that "are or were available to consumers" within the preceding 90 days. Plaintiff alleges that the CCC system uses advertised prices of comparable vehicles "located as close as possible to the insured's residence." Compl. ¶¶ 3, 21. And Plaintiff's CCC Report allegedly did that, using advertised prices of 12 comparable vehicles, available within the preceding 84 days, found within 17 miles of the Audi. *Id.* at ¶¶ 21–23; Ex. B, CCC Report, at 2–20.

Plaintiff's attempt to insert a requirement for the "average cost" to be determined from "actual sales prices," with no adjustment for differences in mileage, condition, or optional equipment is unavailing. *See* Compl. ¶ 28 (inserting new rule). The regulation's plain language permits the settlement value to be derived from comparable vehicles that "*are* or were" available to consumers. Vehicles that "are" available would not have actual sales prices, and would, necessarily, be advertised for sale.[7] Adjustments for condition, mileage, and options ensured the

---

[7] *See State ex rel. Carna v. Teays Valley Local Sch. Dist. Bd. of Educ.*, 967 N.E.2d 193, 198, ¶ 18 (Ohio 2012) (words and phrases must be read "in context" and construed "'in accordance with rules of grammar and common usage,'" and should not be "restrict[ed], constrict[ed], qualif[ied], narrow[ed], enlarge[ed], or abridge[d]," and courts should "abstain from inserting words where words were not placed by the [rule-making authority].") (citations omitted).

derived prices were comparable to the estimated price of the Audi.  Compl. ¶ 21, Ex. B.

Nothing in (H)(7)(a) prohibits an insurer from using an "electronic database or system" to derive the "average cost of two or more comparable automobiles," as Plaintiff incorrectly claims. *Compare* Compl. ¶ 28 (making this incorrect claim), *with* OHIO ADMIN. CODE § 3901–1–54(H)(7)(a) (not prohibiting electronic databases or systems).  To read such a prohibition into the regulation would lead to absurd results because an insurer using this option could derive the value of a vehicle using a printed or spoken advertisement, but could not use that same information if it was stored in a database.  Plaintiff's created restriction would also drive up costs, as it would unnecessarily require GEICO to search printed advertisements for comparable vehicles every time it has to derive the value of a total loss vehicle, sacrificing any efficiency that could be realized by compiling the information in a database.  That cannot be what the rule maker intended.

> **b.** Plaintiff Does Not Plausibly Allege That The CCC System Is Not A Generally Recognized Used Motor Vehicle Industry Source Under § 3901–1–54(H)(7)(d)(i).

Plaintiff does not plausibly allege that the CCC system does not comply with (H)(7)(d)(i), which permits an insurer to derive the settlement value of a total loss vehicle from "a generally recognized used motor vehicle industry source," such as "[a]n electronic database," as long as "the pertinent portions of the valuation documents generated by the database are provided by the insurer to the claimant upon request."

Although Plaintiff proffers a legal conclusion that the CCC system is not "a generally recognized used motor vehicle industry source," he alleges no facts plausibly supporting that conclusion.  Compl. ¶¶ 3, 27, 37.  As a threshold matter, GEICO, and other insurers, participate in the used motor vehicle industry by insuring numerous used motor vehicles.  *Id*. at ¶¶ 12, 33, 44; *see Twombly*, 550 U.S. at 555 (court need not accept as true legal conclusions couched as factual allegations).  Although Plaintiff alleges that the CCC System is "not marketed to the used motor vehicle industry," his conclusion that the industry is only "car dealers and brokers," lacks

support; further, his allegations and common sense contradict that conclusion.  Compl. ¶ 27.  The rule-maker — the superintendent of insurance — could have limited this subsection to only sources generally recognized by "car dealers and brokers," but instead adopted language encompassing the entire industry, including buyers, sellers, financers, and insurers.  *See M6 Motors, Inc. v. Nissan of N. Olmsted, LLC*, 14 N.E.3d 1054, 1070, ¶ 65 (Ohio Ct. App. 2014) ("Statutory interpretation of undefined terms in a statute is a question of law, not of fact."); *DLZ Corp. v. Ohio Dep't of Adm. Serv.*, 658 N.E.2d 28, 30 (Ohio Ct. App. 1995) ("[W]ords left undefined by statute are to be interpreted by using their usual, common and everyday meaning.") (citation omitted).  CCC's alleged "focus[] on selling the CCC system . . . to insurance companies," participants in the used motor vehicle industry, does not mean it is not a generally recognized used motor vehicle industry source.  The rule merely requires a source "generally recognized" in the industry.  OHIO ADMIN. CODE § 3901–1–54(H)(7)(d).  Just because a product is not marketed to a segment of an industry does not mean it is not "generally recognized" in that industry.  Plaintiff himself acknowledges that multiple insurance companies use and rely on the CCC system, illustrating its wide acceptance.  *See, e.g.*, Compl. ¶¶ 18, 25, 27.[8]

Plaintiff also alleges that GEICO gave him access to the CCC Report, which he attached to his Complaint, on its website.  Compl. ¶¶ 2, 18–21, 26, 34–35, Ex. B.  GEICO, therefore, gave Plaintiff "the pertinent portions of the valuation documents generated by the database" upon request.  OHIO ADMIN. CODE § 3901–1–54(H)(7)(d)(i).

> c.  Plaintiff Does Not Plausibly Allege That GEICO Did Not Comply With § 3901–1–54(H)(2).

Section 3901–1–54(H)(2) requires insurers to "maintain all information pertaining to" a claim-amount reduction because of "betterment, depreciation or comparative negligence" in the claim file.  It also requires that those deductions be "itemized and specified on the written estimate as to dollar amount and be appropriate for the amount of deductions."  Plaintiff's CCC

---

[8] Subsection (H)(7)(d), like (H)(7)(a), does not limit usable information to actual sales data, as Plaintiff claims, and the regulation allows adjustments for condition, including taking into account differences in mileage and optional equipment.  OHIO ADMIN. CODE. § 3901–1–54(H)(7).

Report itemizes and specifies adjustments due to betterment or depreciation by: (1) identifying the mileage and specific features of the Audi that were considered; (2) providing detailed inspection notes describing the condition of various Audi components; (3) listing specific dollar amounts by which the Audi's value was adjusted because of the condition of the components; (4) explaining the reasoning for the dollar adjustments; and (5) providing a total written estimate that reflects an upward adjustment of $1,446 to the Audi's value based on the inspected components' condition.  Compl. at Ex. B at 1–7.  The CCC Report includes specific itemized comparisons for each comparable vehicle; identifies the mileage and the numerous components present, or absent, in each vehicle; lists specific written dollar amounts by which each vehicle's value was adjusted to account for differences in the make, model or trim, options, mileage, and condition; and lists the adjusted comparable value for each vehicle.  *Id.* at 8–15.

The CCC Report also itemizes the Uniform Condition Adjustments, which are applied to the comparison vehicles to set those dealer advertised vehicles from dealer condition to private condition.  *Id.* at 9–15.  Plaintiff's complaint that these adjustments should not be uniform either misinterprets or misrepresents the adjustment.  Compl. ¶ 23.  The CCC Report derives a "Base Vehicle Value" by identifying the price of 12 comparable vehicles advertised by dealers.  *Id.* ¶¶ 23, 34; Ex. B at 9–15.  To make an apples-to-apples comparison, before averaging the advertised vehicles' values, the CCC Report makes upward and downward adjustments based on the package, make/model/trim, options, and mileage.  Compl. at Ex. B at 8–13.

After these adjustments are made, the comparable vehicles, which are all dealer advertised, as opposed to privately owned, are similar to the loss vehicle except for one respect — condition.  A Uniform Condition Adjustment to each comparable vehicle sets the comparable vehicle to an Average Private condition, to which the Audi is also compared.  *Id.*  One would expect those adjustments to be the same on vehicles otherwise adjusted to be similar as to options, mileage, and make/model/trim.  *Id.*

The CCC Report provided Plaintiff with sufficient information to exercise his right to "renegotiate the settlement if a comparable vehicle [was] not available for purchase within thirty-

15

five days of receipt of the settlement," as contemplated by the regulation upon which Plaintiff relies.  OHIO ADMIN. CODE § 3901–1–54(H)(7)(f).  He had information about 12 comparable vehicles within 17 miles of the Audi, adjustments made to those vehicles for differences from the Audi, and an explanation that the Audi's value was decreased from the price of a dealer advertised vehicle by $277 because the Audi's tires, glass and carpets were in average private condition (an assessment he does not challenge).  Compl. at Ex. B at 6–7 (showing the total adjustment based on the Audi's condition increased the value from Average Private by $1,446); *id.* at 9–15 (identifying the total difference between dealer retail and average private condition vehicle as $1,723).[9]  Plaintiff has not plausibly alleged GEICO failed to provide this information.

> ii.    *Plaintiff Identifies No Policy Term That GEICO Breached By Using The CCC System.*

Count IV depends wholly on § 3901–1–54(H)(7), the regulation that provides no private right of action.  The count fails for another reason, as well: Plaintiff has not plausibly alleged that GEICO's use of the CCC system violated the Policy.  Other than the alleged regulatory violations, Plaintiff identifies no Policy term GEICO purportedly breached by using the CCC system.  Compl. ¶¶ 3, 17–32, 74–76; *see Borden v. Antonelli Coll.*, 304 F. Supp. 3d 669, 677 n.9 (S.D. Ohio 2018) (plaintiff must "identify[] and present[]the actual terms of the contract allegedly breached" for a breach of contract claim) (citation omitted).  Plaintiff also identifies <u>no</u> Policy term requiring GEICO to use NADA or Kelly Blue Book to derive a settlement value, Compl. ¶¶ 3, 25–26, 36, nor can he do so, because no such term exists.  *See generally*, Ex. 1 (including no such requirement).  Because the Policy only requires GEICO to pay the actual cash value of a total-loss vehicle — that is its replacement cost, less depreciation or betterment — Plaintiff has not plausibly alleged that use of the CCC system violates the Policy's terms.

> iii.   *Plaintiff Offers No Plausible Damages Theory.*

Section 3901–1–54(H)(7) expressly permits an insurer to reduce a settlement offer by

---

[9]  The $1,723 total difference between Dealer Retail and Average Private condition less the $1,446 credited for the Audi's actual condition is $277.

"any applicable deductible amount contained in the policy, and/or deduction for betterment as contained in paragraph (H)(2)."  Subsection (H)(2) permits an insurer to reduce a claim amount "because of betterment, depreciation or comparative negligence."  The Policy, likewise, permits such reduction.  *See* Compl. ¶ 15 (defining actual cash value and the limit of GEICO's liability).

Even if this Court were to accept Plaintiff's unsupported allegation that the "Clean Retail" value of the Audi was $29,300, as the NADA Report states, Compl. ¶ 36, Ex. C, April 1, 2019 NADA Report, Plaintiff does not dispute that his vehicle was not in "Clean Retail" condition.  Specifically, Plaintiff does not allege GEICO incorrectly assessed the Audi's condition when it found the Audi's tires, glass, and carpets were in average private (*i.e.*, not dealer) condition.  Compl. at Ex. B at 6–7.  Under the regulation and the Policy, therefore, Plaintiff could have received only an amount less than $29,300.

Plaintiff provides no plausible allegation that the reduction for the Audi's condition from the NADA "Clean Retail" value is less than the $161 difference that he alleges exists between the purported NADA "Clean Retail" value and the CCC Report "Adjusted Vehicle Value" that GEICO offered, and Plaintiff accepted, in settlement.  *Compare* Compl. at Ex. B at 1 (the CCC Report value of $29,139) *with* Compl. at Ex. C (the NADA "Clean Retail" value of $29,300); Compl. ¶ 36 (alleging a $161 undervaluation).  The CCC Report decreased the value of the Audi by $277 (more than the difference Plaintiff claims) because the Audi's tires, glass and carpets were in average private condition.  *See supra*, n.9; Compl. at Ex. B at 6–7 (showing the reductions); *id.* at 9–15 (identifying the total difference between dealer retail and average private condition).  Plaintiff does not challenge this deduction and has not plausibly alleged that he was damaged because he received $161 less than the "Clean Retail" NADA value for an Audi not in clean retail condition.  *See Transp. Ins. Co. v. Busy Beaver Bldg. Ctrs., Inc.*, 969 F. Supp. 2d 875, 885 (S.D. Ohio 2013) (nonbreaching party must suffer damages because of the breach).

E.    **Count V Fails Because The Regulations And Policy Do Not Require GEICO To Pay "Dealer Fees," Plaintiff's Dealer-Fee Allegations are Implausible, and Plaintiff Has Not Alleged Damages.**

i.    <u>Neither The Regulations Nor Policy Require GEICO To Pay Presumed Dealer Fees.</u>

Plaintiff identifies no provision of § 3901–1–54(H)(7) that requires insurers to anticipatorily pay claimants the statutory maximum of $250 in dealer fees.  As with the title and license fees, § 3901–1–54(H)(7) does not refer to "dealer fees," much less require insurers to anticipatorily pay the statutory maximum fee that dealers might charge.  As discussed above, GEICO settles a total loss claim based on "actual cash value" *before* a claimant acquires a replacement vehicle.  That settlement includes no subsequent collateral costs such as theoretical dealer fees.  This Court should decline to read into the rule's clear and unambiguous language a requirement that an insurer reimburse a claimant — at the statutory maximum rate — for a dealer fee they *might* subsequently incur, that the regulation does not require be paid.  *See Wachendorf*, 78 N.E.2d at 374 (legislature is presumed to know meaning of words in statute and to have chosen them "advisedly" to express its intent).

Plaintiff also identifies no Policy provision requiring GEICO to assume that a claimant will incur $250 in dealer fees not required by any statute or rule, *see* OHIO REV. CODE ANN. §§ 1317.07, 4517.261 (dealer fees statutes), and anticipatorily pay them.  Compl. ¶¶ 4, 32, 36, 79; *see Jarupan*, 878 N.E.2d at 73, ¶ 18 (to prove breach of contract, plaintiff must show defendant "'did not perform one or more of the terms of the contract'") (citation omitted).

ii.    <u>Plaintiff Has Not Plausibly Alleged That He Will Incur Dealer Fees.</u>

Plaintiff fails to adequately allege he will incur discretionary dealer fees, which no statute or regulation requires, only might be charged, and, even if charged, only might be paid.  OHIO REV. CODE ANN. §§ 1317.07, 4517.261.  Plaintiff also fails to allege that he actually incurred $250 in dealer fees either in purchasing or replacing the Audi; rather, his claim is based on speculation and generalizations unsupported by any factual allegation.  Compl. ¶¶ 4, 32, 36, 79.

Plaintiff's generalization — unsupported by any factual allegations — that "virtually no

18

car dealer in the State of Ohio will sell a vehicle without charging" dealer fees is implausible.  *Id.* at ¶ 32; *see Iqbal*, 556 U.S. at 678 (legal conclusions are not accepted as true).  By qualifying the allegation, Plaintiff concedes that not all dealerships charge such fees.  Compl. ¶ 32.  He also concedes that when a fee is allegedly charged, it is not always $250.  *Id.* at ¶¶ 36, 79 (describing the "most frequently charged" amount); *see* OHIO REV. CODE ANN. § 4517.261 (simply capping document service charge).  Ordinary experience confirms used car dealers often negotiate these discretionary fees to close a sale.  *See Twombly*, 550 U.S. at 555 (legal conclusions "couched as . . . factual allegation[s]" need not be accepted as true) (quotation omitted).

Plaintiff's qualified statements about dealers who charge fees fails to allege anything about used car dealers that sell vehicles comparable to his own, such that he would be required to pay it to replace the Audi.  Compl. ¶¶ 4, 32, 36, 79.  The regulation only requires a settlement to be based on "the actual cost to purchase a comparable automobile."  OHIO ADMIN. CODE § 3901–1–54(H)(7).  The Policy also requires GEICO to pay only the replacement cost of the Audi, limited to the prevailing competitive cost to replace it.  Compl. ¶ 15.  Even if dealer fees are part of the actual cash value, Plaintiff alleges no facts plausibly suggesting he would be required to pay them to purchase a comparable Audi.

Plaintiff also does not allege he actually incurred a dealer fee, much less $250.  *Id.* ¶¶ 4, 32, 36, 79.  The demand letter Plaintiff attached to his Complaint concedes that he purchased a replacement vehicle, *id.* at Ex. D at 4, but nowhere does he allege he incurred a dealer fee when he purchased the replacement.  Without a requirement that he pay a dealer fee, or an allegation that he incurred one, Plaintiff has not plausibly alleged facts supporting the damages element of his breach of contract claim.

**F.  Count I Fails For The Same Reason As The Claims With Which It Is Redundant, And Plaintiff Fails To Satisfy The Requirements For Obtaining Relief Under The Ohio Declaratory Judgment Act.**

Count I is wholly redundant of Counts II through V, seeking declarations on the same alleged breaches of contract.  Compl. ¶¶ 56–57, 67.  The lack of a private right of action for

alleged violations of § 3901–1–54(H)(7), alone, defeats Plaintiff's declaratory-relief claim. *See Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 907 (6th Cir. 2014) ("[n]o private right of action means no underlying lawsuit, [n]o underlying lawsuit means no jurisdiction," and "no jurisdiction means no declaratory relief") (citation omitted).

Besides the lack of a private right of action, whether under Ohio or federal law,[10] Plaintiff's declaratory judgment claim fails for the same reasons the breach of contract claims fail. *See supra*, §§ III–VII; *Days Inn Worldwide, Inc. v. Sai Baba, Inc.*, 300 F. Supp. 2d 583, 592–93 (N.D. Ohio 2004) ("A request for declaratory judgment must accompany the substantive claim for which declaratory judgment is sought.").

## IV.    **CONCLUSION**

For the foregoing reasons, GEICO respectfully requests the Court dismiss Plaintiff's Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Julie Miceli*
Julie Miceli
Husch Blackwell LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
Phone:  (312) 655-1500
Facsimile: (312) 655-1501
Julie.Miceli@huschblackwell.com

and

Dan W. Goldfine (ABN: 018788)
(*pro hac vice* pending)
Ian M. Fischer (ABN: 026239)
(*pro hac vice* pending)
Elizabeth B. N. Garcia (ABN: 032209)
(*pro hac vice* pending)
Husch Blackwell LLP

</div>

---

[10] *Compare Ryan v. Romo*, No. 2:14–CV–38, 2017 WL 2225481, at *6 n.5 (S.D. Ohio May 22, 2017) ("The Court applies Ohio law to declaratory judgment actions when sitting in diversity.") (citation omitted) *with Jack v. Grose*, No. 2:16–CV–633, 2017 WL 958621, at *9 (S.D. Ohio Mar. 13, 2017) ("[A]lthough state law provides the substantive rights of the parties under a contract, 'the question of justiciability is a federal issue to be determined only under federal law.'") (quotation omitted) *and Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 465 F. Supp. 2d 827, 831 (N.D. Ohio 2006) ("'[T]he federal rules respecting declaratory judgment actions apply in diversity cases.'") (citation omitted).

5060 North 40th Street, Suite 250
Phoenix, Arizona 85018
Phone: (480) 824-7900
Facsimile: (480) 824-7905
Dan.goldfine@huschblackwell.com
Ian.fischer@huschblackwell.com
Elizabeth.garcia@huschblackwell.com

*Counsel for GEICO Casualty Company*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system on November 5, 2019, which will result in service upon all counsel of record.

*/s/ Julie Miceli*
Attorney