# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| MILIND DESAI, | ) Case No. 1:19-cv-2327 |
| Plaintiff, | ) |
| | ) Judge J. Philip Calabrese |
| v. | ) |
| | ) Magistrate Judge |
| GEICO CASUALTY COMPANY, | ) William H. Baughman, Jr. |
| | ) |
| Defendant. | ) |
| | ) |

## OPINION AND ORDER

Last year, before re-assignment of this case, the Court largely denied Defendant's motion to dismiss under Rule 12(b)(6). *See Desai v. Geico Cas. Co.*, 478 F. Supp. 3d 609, 618 (N.D. Ohio 2020). Although the pleadings closed some time ago, Defendant Geico Casualty Company now seeks judgment in its favor under Rule 12(c) on all of Plaintiff Milind Desai's remaining claims. (ECF No. 74.) For the reasons that follow, the Court **DENIES** Defendant's motion (ECF No. 74) and also **DENIES** Plaintiff's motion for leave to file a sur-reply (ECF No. 82).

## BACKGROUND

In prior rulings, the Court recounted the factual and procedural background. For purposes of the discussion that follows, the Court assumes some familiarity with its earlier rulings. Also, in this procedural posture, the Court takes the facts Plaintiff alleges as true and draws reasonable inferences in his favor.

### A. The Court's Rule 12(b)(6) Ruling

In August 2020, before re-assignment of the case, the Court granted in part and denied in part Defendant's motion to dismiss under Rule 12(b)(6). In that ruling, the Court determined Plaintiff's breach of contract claims about Geico's alleged failure to pay license, title, and dealer fees stated a claim for relief. (ECF No. 49, PageID #644.) In so ruling, the Court determined the phrase "actual cash value" as it appears in the insurance policy was ambiguous because it did not define "replacement cost" and that Plaintiff's interpretation of the policy was reasonable, making dismissal of some claims inappropriate. (*Id.*, PageID #646.)

In reaching this determination, the Court identified the relevant policy language as follows:

> **DEFINITIONS**
>
> **1. *Actual cash value*** is the replacement cost of the auto or property less ***depreciation*** or ***betterment***.
> . . .
> **7. *Loss*** means direct and accidental loss of or damage to:
> (a) the auto including its equipment; or
> (b) other insured property.
> . . .
>
> **LOSSES WE WILL PAY FOR YOU**
> . . .
> ***Collision***
>
> **1.** We will pay for ***collision loss*** to the ***owned*** or ***non-owned auto*** for the amount of each loss less the applicable deductible.
> . . .
>
> **LIMIT OF LIABILITY**
>
> The limit of our liability for ***loss***:
> 1. is the ***actual cash value*** of the property at the time of the ***loss***;
> . . .

> *Actual cash value* of property will be determined at the time of the *loss* and will include an adjustment for depreciation/betterment and for the physical condition of the property.
>
> . . .
>
> 7. PAYMENT OF *LOSS*
>
> We may at our option:
>     (a) pay for the *loss*; or
>     (b) repair or replace the damaged or stolen property.

(ECF No. 12-1, PageID #247–50.) Although the Court allowed four of Plaintiff's claims to proceed, it dismissed one claim alleging that Defendant breached its insurance agreement by using a specific system for valuing cars, which Plaintiff claimed ran afoul of Section 3901-1-54(H) of the Ohio Administrative Code. (ECF No. 49, PageID #646–51.) Plaintiff's surviving claims include a request for declaratory judgment (Count 1) that Geico breached its insurance contract with Dr. Desai by failing to pay license fees (Count 2), title fees (Count 3), and dealer fees (Count 5). (ECF No. 1-1, ¶¶ 55–73, 77–79, PageID #33–37; ECF No. 49.)

    **B.    Facts Relevant to the Remaining Claims**

Dr. Desai maintains that after his Audi A6 Premium Plus Quattro 4d was "rendered . . . a total loss," Geico offered to pay him $29,039. (ECF No. 1-1, ¶¶ 33–34, PageID #26.) What Geico did not pay, he claims, are any of the "title fees," "license fees[,] or dealer fees" that typically accompany a new car sale. (*Id.*, ¶ 32, PageID #25–26.)

Plaintiff asserts that those fees are included in the policy's definition of "actual cash value," meaning Geico should pay him those additional fees. Dr. Desai maintains that Geico "undervalued by approximately $161" the amounts due under

3

the policy and that he is entitled to "$4.50" for interest accrued on delayed payment of title fees (or $15.00 in title fees if Geico "never paid it"), plus an additional $250, the amount of the "most frequently charged dealer fee[] in Ohio." (ECF No. 1-1, ¶ 36, PageID #27.)

### C. Defendant's Motion for Judgment on the Pleadings

With the pleadings closed, Defendant moves for judgment on the pleadings on all of Plaintiff's surviving claims. Defendant argues that a recent opinion by the Seventh Circuit, *Sigler v. Geico Casualty Co.*, 967 F.3d 658 (7th Cir. 2020)—not addressed in the Court's ruling on Defendant's Rule 12(b)(6) motion—demonstrates that "Plaintiff's claims fail as a matter of law." (ECF No. 74, PageID #1005.) As in *Sigler*, Defendant argues that the insurance policy at issue does not obligate it to pay "collateral" license, title, and dealer fees because the policy "covers only 'loss of or damage to the auto,'" exclusive of the fees he seeks. (*Id.*, PageID #1006.) On this point, Defendant argues the Court's earlier ruling "wrongly concluded that Geico promised in the policy to pay the actual cash value" as opposed to just the "amount of loss or damage to the auto." (*Id.* (cleaned up).)

Further, Defendant argues that without the benefit of *Sigler*, the Court's previous ruling "should not have relied on" two cases which it did. (*Id.*, PageID #1006–07.) In Defendant's view, the Court's reliance on the first, *Parkway Associates, LLC v. Harleysville Mutual Insurance Co.*, 129 F. App'x 955 (6th Cir. 2005), is misplaced because Geico "never promised to pay actual cash value" but instead the policy uses "actual cash value [a]s a limit of liability." (*Id.*, PageID #1007.) As for the second case, *Davis v. Geico Casualty Co.*, No. 2:19-cv-2477, 2020 WL 68573 (S.D. Ohio

4

Jan. 7, 2020), Defendant argues the Court "erroneously relied on dicta," and in any event, *Davis* involved paying sales tax, "which is not at issue here." (*Id.*)

Alternatively, Defendant argues the remaining claims fail for a host of other reasons. It argues the license fee claim fails because Section "4503.2" of the Ohio Revised Code does not "authorize the fee[s] he seeks" and Dr. Desai did not "incur the fee" when he replaced his Audi. (*Id.*, PageID #1008–09.) On that front, Defendant notes that Dr. Desai cites the wrong provision of the Ohio Revised Code—mistakenly referencing Section 4503.02 (annual license tax) instead of Section 4503.12 (transfer fee)—and asserts he should be held to that drafting mistake. (*Id.*, PageID # 1009.) On the license fee issue, Defendant maintains the policy does not require Geico to reimburse "a fee that might be incurred without substantiation" that it was in fact paid. (*Id.*, PageID #1009.) As for the title fee claim, Defendant argues it paid Dr. Desai that fee, and Plaintiff has not alleged Geico either failed to do so or did so in violation of the policy. (*Id.*, PageID #1009–10.) Finally, as to the dealer fee, Defendant argues Plaintiff failed to state a claim that he did or would incur that fee at all. (*Id.*, PageID #1010–11.)

In response, Plaintiff maintains that the Court should not entertain Defendant's Rule 12(c) motion because of the "extensive fact discovery" that has already taken place. (ECF No. 79, PageID #1050.) Should the Court take up the motion, however, Plaintiff argues the law of the case doctrine precludes revisiting the earlier ruling. (*Id.*, PageID #1050–52.) Plaintiff contends that *Sigler* is not a "change in controlling law" and, therefore, does not provide a basis for reconsideration. (*Id.*,

PageID #1051–52 (distinguishing *Sigler*).) Finally, Plaintiff argues that Defendant has not provided a legitimate reason to revisit the earlier conclusion about title and license fees either. (*Id.*, PageID #1065–67.)

In reply, Defendant largely repeats the arguments made in its opening brief, and those previously made to the Court. ([ECF No. 80](#).) Beyond that, Defendant takes exception to the extraneous materials outside the pleadings Plaintiff relied on in opposing the motion (*id.*, PageID #1095–97) and argues against application of law of the case doctrine so the Court can "address case law not previously briefed" (*id.*, PageID #1100–02).

## ANALYSIS

"The only difference between Rule 12(c) and Rule 12(b)(6)" is timing. *Hunter v. Ohio Veterans Home*, 272 F. Supp. 2d 692, 694 (N.D. Ohio 2003). Rule 12(c) provides that, once "the pleadings are closed" a party may "move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings . . . generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)).

Therefore, on a motion under Rule 12(c), courts "must follow the Supreme Court's changes to the pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)." *Bates*, 958 F.3d at 480 (citing *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017)). Only "well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief" and "allow the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged" will survive. *Bates*, 958 F.3d at 480 (quotation and citation omitted). Conversely, "[m]ere labels and conclusions are not enough[.]" *Engler*, 862 F.3d at 575. Nor are facts that are "merely consistent with" liability. *Bates*, 958 F.3d at 480 (quotation omitted). While "the court's decision rests primarily upon the allegations of the complaint[,]" "exhibits attached to the complaint may also be taken into account." *JTO, Inc. v. Travelers Indem. Co. of Am.*, 242 F. Supp. 3d 599, 602 (N.D. Ohio 2017) (cleaned up).

Plaintiff invites the Court to consider materials outside the pleadings in response to Defendant's motion. On a motion under Rule 12(c), courts "may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein." *DeShetler v. FCA US LLC*, No. 3:18 CV 78, 2018 WL 6257377, at *4 (N.D. Ohio Nov. 30, 2018) (quoting *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016)). Without converting the motion to one for summary judgment, the Court may not consider other matters outside the pleadings. Therefore, the Court will not do so.

I. **Procedural Limits on Defendant's Motion**

With certain narrow exceptions not applicable here, Rule 12(g)(2) limits Defendant's ability to file a second motion directed at the pleadings. "[A] party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Procedurally, this limitation makes Defendant's

7

motion appear much more like a one for reconsideration than a true motion for judgment on the pleadings.

Although the rules do not formally provide for reconsideration, the reasons for altering or amending a judgment under Rule 59 or for obtaining relief from a judgment under Rule 60 generally delineate the circumstances under which a court will grant reconsideration. This is so even though, strictly speaking, "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action . . . and may be revisited at any time before the entry of judgment[.]" Fed. R. Civ. P. 54(b).

Justifying reconsideration requires a moving party to: (1) demonstrate an intervening change in the controlling law; (2) establish that new evidence is available; or (3) prove that a clear error occurred or reconsideration is necessary to prevent manifest injustice. *See Louisville/Jefferson Cnty. Metro. Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009). A district court retains discretion to entertain such a motion. *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 n.7 (6th Cir. 2004). And while the court has "the authority to revisit non-final orders, a mere case reassignment is not a sound legal basis for doing so." *Bailey v. City of Howell*, No. 2:13-cv-14082, 2015 WL 736599, at *8 (E.D. Mich. Feb. 20, 2015). Here, Defendant makes no effort to argue any basis for reconsideration (*see generally* ECF No. 74), and the Court finds none. To the extent Geico's reliance on *Sigler* loosely provides an intervening change in the law, though not controlling, the Court discusses that issue below.

## II. Prudential Limits on Defendant's Motion

Plaintiff maintains that law of the case doctrine presents a procedural bar to considering Defendant's motion for judgment on the pleadings. The "purpose of the law-of-the-case doctrine is to ensure that the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*." *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015) (quoting *Sherley v. Sebelius*, 689 F.3d 776, 780 (D.C. Cir. 2012)). This doctrine is based in the "prudential practice" that "a court may revisit earlier issues, but should decline to do so to encourage efficient litigation and deter indefatigable diehards." *Id.* at 740 (quotation omitted). It promotes "interests in consistency, finality and the conservation of judicial resources, among others." *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007).

This doctrine applies when a case is re-assigned. *Id.* "In particular, a new judge should not allow a party to use the old judge's departure as a chance to put to a general test the body of decided matters." *ADT Servs., AG v. Brady*, No. 10-2197, 2013 WL 1450924, at *1 (W.D. Tenn. Apr. 9, 2013). "Unless the moving party raises a plain error (or, perhaps, a pressing issue, such as jurisdiction), the previous judge's rulings should govern." *Id.* (citing *Moses v. Business Card Express*, 929 F.2d 1131, 1137 (6th Cir. 1991)). Generally, some "compelling reason," like a "manifest error or a change in the law, that warrants re-examination" must exist to justify revisiting an earlier ruling under this doctrine. *Minch*, 486 F.3d at 301 (collecting cases). "The Supreme Court has held that although a court has the power to revisit its own decisions . . . it should not do so absent extraordinary circumstances showing that the prior decision was clearly wrong and would work a manifest injustice." 18 *Moore's*

9

*Federal Practice* § 134.21[1] (2021) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)).

### II.A. Manifest Injustice and Class Certification

Because of the high standard manifest injustice presents, the Court begins its analysis there, recognizing the current procedural posture in which the parties are preparing for class certification. On the one hand, a "class action is a worthwhile device for economizing on the expense of litigation and enabling small claims"—like Dr. Desai's—"to be litigated at all." *Thorogood v. Sears, Roebuck & Co.*, 624 F.3d 842, 848 (7th Cir. 2010), *vacated on other grounds*, 564 U.S. 1032 (2011). On the other hand, "the device also lends itself to abuse." *Id.* Class certification, or even the threat of it, can put "intense pressure" on a defendant to settle. *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1298 (7th Cir. 1995) (noting Judge Friendly "called settlements induced by a small probability of an immense judgment in a class action 'blackmail settlements'"); *see also Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 834–35 (7th Cir. 1999) (noting that a "grant of class status" can place "considerable pressure on the defendant to settle, even when the plaintiff's probability of success on the merits is slight"). Because of the economic and coercive pressures inherent in class certification, a failure to correct a clear error may well result in a manifest injustice and warrant revisiting an earlier ruling.

### II.B. Clear Error

Clear error arises most commonly from either misapplication of law or an intervening change in controlling precedent. Defendant argues a Seventh Circuit

10

case, *Sigler v. Geico Casualty Co.*, 967 F.3d 658 (7th Cir. 2020), is "instructive" and "explains why Plaintiff's claims fail" here. ([ECF No. 74](), PageID #1005.)

While it may be persuasive or informative, *Sigler* is not controlling and, therefore, does not amount to a change in law that warrants revisiting the Court's earlier ruling. Moreover, the Seventh Circuit decided *Sigler* nearly two weeks before the Court ruled on Defendant's Rule 12(b)(6) motion, leaving plenty of time for Defendant to file a notice of supplemental authority before the Court ruled on its motion to dismiss. It chose not to do so. In any event, *Sigler* interpreted an insurance policy under the law of a different State, and local insurance regulations specifically guided the *Sigler* Court. 967 F.3d at 661. Accordingly, it has limited persuasive authority here—certainly not enough to warrant reopening a settled ruling that has guided the parties in this proceeding for many months.

Recently, however, the Sixth Circuit and at least one intermediate Ohio appellate court examined insurance policies in cases with claims similar to those Plaintiff makes here. The Court considers each in turn.

### II.B.1. *Williams-Diggins*

In *Williams-Diggins v. Permanent General Assurance Corp.*, 2020-Ohio-3973, 157 N.E.3d 220 (8th Dist.) (2–1 decision), an intermediate Ohio appellate court considered whether an auto insurance policy that promised to pay the actual cash value of a totaled vehicle excludes sales tax and fees. Affirming the trial court, the appellate court concluded that the policy unambiguously excluded fees and sales tax because it did not contain an agreement to pay the policy holder for "a replacement vehicle." *Id.* at ¶ 14. Notably, the court distinguished between policies that define

11

"actual cash value" as "fair market value" from policies that define it as "replacement cost less depreciation," *id.* at ¶¶ 15–19, the latter of which is how the term is defined in the policy at issue here (ECF No. 12-1, PageID #247). Put another way, the definition of actual cash value in the insurance policy at issue here embraces replacement cost less depreciation (which was not the definition of the term in *Williams-Diggins*), creating an inference that fees are included in replacement cost, or at least presenting a question whether they are. Therefore, *Williams-Diggins* bolsters the result the Court previously reached on Defendant's motion to dismiss.

### II.B.2. *Wilkerson*

Recently, the Sixth Circuit addressed the issue in *Wilkerson v. American Family Insurance Co.*, ___ F.3d ____, 2021 WL 1921412, at *2 (6th Cir. May 13, 2021) (2–1 decision). There, the plaintiff sought to recover sales taxes and fees as part of the "actual cash value" of her totaled car. Because the term "actual cash value" has "developed a technical usage" and is a "term of art in this insurance context," the court determined as a matter of Ohio law that the phrase has evolved to have two meanings—fair market value *or* replacement cost minus normal depreciation. *Id.* at *2–3. The court ultimately held the undefined phrase "actual cash value" in *Wilkerson* meant "fair market value," exclusive of the taxes and fees the motorist sought. *Id.* at *3.

Unlike the policy here, the one in *Wilkerson* did not define actual cash value. *Compare id.* at *2, *with* ECF No. 12-1, PageID #247. When left undefined, the term "can bear two meanings" under Ohio law: fair market value or replacement cost less depreciation. *Wilkerson*, 2021 WL 1921412, at *3. Here, however, Geico's policy

12

specifically defines the term. (ECF No. 12-1, PageID #247.) Indeed, the Sixth Circuit recognized that the policy language in this case equates actual cash value with replacement cost. 2021 WL 1921412, at *3 (citing *Desai*, 478 F. Supp. 3d at 613). Although the Sixth Circuit's ruling in *Wilkerson* affords able counsel some latitude to make arguments (*see* ECF No. 80, PageID #1092–95), the Court overall takes the decision as a strong indication that the Court's earlier Rule 12(b)(6) ruling is likely correct, or at least not clearly erroneous.

Based on *Williams-Diggins* and *Wilkerson*, the Court cannot conclude that the Court's previous ruling clearly erred by relying on the other cases to which Defendant points (*Parkway*, *Ostendorf*, *Sos*, and *Davis*) either. Contrary to Defendant's argument, the Court's previous ruling analyzed the coverage-granting provisions of the policy. *Desai*, 478 F. Supp. 3d at 613–14. That policy language provides that Geico may, at its option, pay for the loss (defined as "the direct and accidental loss of or damage to . . . the auto") or may "repair or replace the damaged . . . property." *Id.* That language raises the issue at the heart of the case—whether replacement includes the fees at issue. On that score, *Williams-Diggins* and *Wilkerson* provide the most recent guidance on the answer Ohio law provides to that question.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Geico Casualty Company's motion for judgment on the pleadings. (ECF No. 74.) Additionally, based on the foregoing discussion of the Sixth Circuit's recent decision in *Wilkerson*, the Court **DENIES** Plaintiff's motion for leave to file a sur-reply. (ECF No. 82.)

**SO ORDERED.**

Dated: May 24, 2021

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio

14